UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHASITY WATKINS, as Guardian of the Person and Estate of AIDEN GREEN, a minor, | ) ) ) ) | |
| Plaintiff, | ) ) ) | No. 18 C 1297 |
| v. | ) ) | |
| VHS WEST SUBURBAN MEDICAL CENTER, INC.; MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; NATASHA DIAZ, M.D.; and TYLER CALLAHAN, D.O, | ) ) ) ) ) ) | Formerly Case No. 16 L 5282 Circuit Court of Cook County, Illinois |
| Defendants. | ) | |

**NOTICE OF REMOVAL OF A CIVIL ACTION AND
SUBSTITUTION OF THE UNITED STATES AS DEFENDANT**

To:     Dorothy Brown                                    Smith Amundsen LLC
        Clerk of the Circuit Court                     150 North Michigan Avenue
        Richard J. Daley Center, Room 1001    Chicago, Illinois 60601
        50 West Washington Street
        Chicago, Illinois 60602

        Michael P. Cogan
        Cogan & Power, PC
        One East Wacker Drive, Suite 510
        Chicago, Illinois 60601

The United States, by its attorney, John R. Lausch, Jr., United States Attorney for the

Northern District of Illinois, submits this notice of removal of the above-captioned civil action

from the Circuit Court of Cook County, Illinois, to the United States District Court, Northern

District of Illinois, pursuant to 42 U.S.C. § 233, and in support thereof states the following:

        1.       Plaintiff Chasity Watkins, as Guardian of the Person and Estate of Aiden Green, a

minor, commenced the above civil action against Drs. Natasha Diaz and Tyler Callahan, among

others, alleging medical malpractice. A copy of the current (second amended) state court complaint is attached as Exhibit A. For purposes of this lawsuit, PCC Community Wellness Center is a private entity that receives grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Exhibit B. In addition, Drs. Natasha Diaz and Tyler Callahan were acting within the scope of her employment at the PCC Community Wellness Center with respect to the incidents referred to in the complaint. *Id.*

2. This notice of removal is filed in accordance with 42 U.S.C. § 233 upon certification by the designee of the Attorney General of the United States that defendants Natasha Diaz, M.D., and Tyler Callahan. D.O., were acting within the scope of their employment at the PCC Community Wellness Center with respect to the incidents referred to in the complaint. Exhibit B.

3. This notice of removal may be filed without bond at any time before trial. 42 U.S.C. § 233(c). Trial has not yet been had in this action.

4. Pursuant to the certification by the Attorney General's designee and the filing of this notice of removal, under 28 U.S.C. § 233(c), this civil action is deemed an action against the United States, and the United States is substituted as the sole federal party defendant in place of defendants Natasha Diaz, M.D., and Tyler Callahan. D.O.

WHEREFORE, this action now pending in the Circuit Court of Cook County, Illinois, is properly removed to this court pursuant to 42 U.S.C. § 233, and the United States is substituted as the defendant in lieu of Natasha Diaz, M.D., and Tyler Callahan. D.O.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Thomas Walsh
    THOMAS P. WALSH
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5312
    thomas.walsh2@usdoj.gov

Tab A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

CHASITY WATKINS, as Guardian of the Person and )
Estate of AIDEN GREEN, a minor, )
                                              )
               Plaintiff, )
                                              )
     v. )          No. 16 L 5282
                                              )
VHS WEST SUBURBAN MEDICAL CENTER, INC., )
MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; )
NATASHA DIAZ, M.D.; and TYLER CALLAHAN, D.O. )
                                              )
             Defendants. )

## SECOND AMENDED COMPLAINT AT LAW

Plaintiff, CHASITY WATKINS, as Guardian of the Person and Estate of AIDEN GREEN,

a minor, complaining of the Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC.;

MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; NATASHA DIAZ, M.D.; AND TYLER

CALLAHAN, D.O., and each of them, states:

### COUNT I

1.     On and before November 4, 2015, the Defendant, VHS WEST SUBURBAN

MEDICAL CENTER, INC. (hereinafter "WEST SUBURBAN"), was a hospital corporation

organized and existing pursuant to the laws of the State of Illinois and it employed nurses,

physicians and other healthcare professionals comprising a single organized medical staff within

its hospital facility located in Oak Park, Cook County, Illinois.

2.     On November 4, 2015, at 1:34 a.m., the Plaintiff, CHASITY WATKINS, was

admitted into the labor and delivery area of the Defendant, WEST SUBURBAN, at 36 ½ weeks

gestational age with a diagnosis of premature rupture of the membranes.

3.     During the next several hours, following an order for continuous fetal monitoring, the fetus appeared on the monitor tracing to be entirely normal with a normal baseline heartrate, variability and accelerations.

4.     By 5:40 a.m. a progress note documents "4 cm dilation / 90% effaced / -2 station, and epidural in place".

5.     At 6:36 a.m., the fetal signal is lost and a note authored by a nursing agent and employee of the Defendant, WEST SUBURBAN, reads "adjusting EFM".

6.     At 7:28 a.m., 52 minutes since the last recorded heartrate of the minor Plaintiff, AIDEN GREEN, the Defendant, MARY LEUNG, R.N. (hereinafter "LEUNG"), an agent and employee of the Defendant, WEST SUBURBAN, authored a note reading "attempting to locate the FHR [fetal heart rate]", reflecting the fact that between 6:36 a.m. and 7:28 a.m., nursing agents and employees of the Defendant, WEST SUBURBAN, including the Defendant, LEUNG, had been unable to locate the minor Plaintiff, AIDEN GREEN's heartrate on the continuous fetal monitor tracing.

7.     At approximately 7:28 a.m. and as a result of her inability to locate the minor Plaintiff, AIDEN GREEN's, fetal heartrate, the Defendant, LEUNG, phoned the Defendant, KARRI MacMILLAN, D.O. (hereinafter "MacMILLAN"), to both notify the Defendant, MacMILLAN, that she was unable to locate the fetal heartbeat of the minor Plaintiff, AIDEN GREEN, and, further, requested that the Defendant, MacMILLAN, come to CHASITY WATKINS' room to place internal monitors.

8.     In response to the Defendant, LEUNG's request to the Defendant, MacMILLAN, that Dr. MacMillan come to CHASITY WATKINS' to place internal monitors, the Defendant, MacMILLAN, responded that she was rounding with Defendants, NATASHA DIAZ, M.D.

2

(hereinafter "DIAZ") and TYLER CALLAHAN, D.O. (hereinafter "CALLAHAN"), and that she would come by upon completion of rounds.

9.    Either during or immediately after the telephone conversation described above between the Defendant, LEUNG, and the Defendant, MacMILLAN, the Defendant, MacMILLAN, shared the details of her conversation with the Defendant, LEUNG, with the Defendants, DIAZ and CALLAHAN.

10.    Sometime between 7:28 a.m. and 8:00 a.m., the Defendant, DIAZ, phoned the Defendant, LEUNG, and advised LEUNG that she would be by after the completion of rounds and that in the interim that LEUNG should continue to attempt to find a fetal heartbeat.

11.    At approximately 8:00 a.m. on November 4, 2015, Brenda Vega Candlario, R.N. an agent and employee of the Defendant, WEST SUBURBAN, entered CHASITY WATKINS' room upon the request of the Defendant, LEUNG, and found a newborn, "cold and no cry" lying between CHASITY WATKINS' legs at which time Brenda Vega Candlario, R.N. sent out an emergency call for help.

12.    After a physician responded to the emergency call for help it was determined that the minor plaintiff, AIDEN GREEN, was born with profound asphyxia: a pH of 6.6 and a base deficit of -27, and Apgar scores of 1, 4, 4, 4, at 1, 5, 10 and 15 minutes after major resuscitative efforts.

13.    On and after 6:36 a.m. on November 4, 2015, the Defendant, WEST SUBURBAN, by and through its nursing agents and employees, including but not limited to the Defendant, LEUNG, were negligent in one or more of the following respects:

      (a)    Failed to properly monitor AIDEN GREEN in utero;

      (b)    Failed to recognize that the fetus in utero was not being monitored;

3

    (c)    Allowed the minor Plaintiff, AIDEN GREEN, to go unmonitored by fetal monitor tracing between approximately 6:36 a.m. on November 4, 2015 and the time that said minor Plaintiff was found appearing lifeless under his mother's right thigh;

    (d)    Failed to attend to CHASITY WATKINS in a timely fashion;

    (e)    Failed to determine that the minor Plaintiff, AIDEN GREEN, had been born and was trapped between his mother's leg;

    (f)    Failed to properly monitor CHASITY WATKINS' labor by appropriate in-room intervals and attention to the fetal monitor tracing;

    (g)    Failed to go up the nursing chain of command in a timely fashion;

    (h)    Failed to advise the Defendant, MacMILLAN, that AIDEN GREEN's fetal heart rate had been lost since 6:36 a.m. during the above-described telephone conversation at 7:28 a.m.

14.    On November 4, 2015, the Defendant, WEST SUBURBAN, by and through its physician agents and employees, including but not limited to the Defendant, MacMILLAN, were negligent in one or more of the following respects:

    (a)    Failed to advise her seniors, Defendant, DIAZ, and Defendant, CALLAHAN, of the details of her telephone conversation with the Defendant, LEUNG;

    (b)    Failed to immediately proceed to CHASITY WATKINS' room to both place internal monitors and to determine why AIDEN GREEN's heart rate had been lost since 6:36 a.m.;

    (c)    Failed to inquire of the Defendant, LEUNG, the length of time that AIDEN GREEN's heart rate had been lost on the fetal monitor tracing;

    (d)    Advised the Defendants, DIAZ and CALLAHAN of the details of her telephone conversation with the Defendant, LEUNG, but failed to go up the physician chain of command when her senior attending, DIAZ, failed to take immediate and appropriate action to determine the well-being of AIDEN GREEN;

    (e)    Failed to contact the charge nurse and request that the charge nurse assist the Defendant, LEUNG, in determining the minor Plaintiff, AIDEN GREEN's well-being and to determine the cause of the inability to obtain a fetal heart rate for AIDEN GREEN since 6:36 a.m.

4

15.     On November 4, 2015, the Defendant, WEST SUBURBAN, by and through its actual and/or apparent agents, DIAZ and CALLAHAN, were negligent in one or more of the following respects:

(a)     Failed to immediately travel to CHASITY WATKINS' room upon the Defendant, MacMILLAN's telephone conversation with the Defendant, LEUNG;

(b)     Failed to determine that their subordinate, MacMILLAN, had had a telephone conversation with Defendant, LEUNG, at approximately 7:28 a.m.;

(c)     Failed to properly train the Defendant, MacMILLAN, to immediately alert her seniors when a nurse called reporting an inability to obtain a fetal heart rate tracing and requested placement of internal monitors to assist in that regard;

(d)     Were aware of the telephone conversation between the Defendant, LEUNG, and the Defendant, MacMILLAN, but determined that any assessment of fetal well-being could wait until after rounds had been completed.

16.     As a proximate cause of the foregoing acts and/or omissions by the Defendant, WEST SUBURBAN, by and through its authorized nursing agents and employees, including but not limited to the Defendant, LEUNG; by its authorized agent and employee, Defendant, MacMILLAN; and by its actual and/or apparent agents, Defendants, DIAZ and CALLAHAN, the minor Plaintiff, AIDEN GREEN, was delivered without a healthcare professional in the room, became trapped under his mother's right thigh and suffered permanent and disabling injuries, including but not limited to hypoxic ischemic encephalopathy (HIE).

17.     Attached hereto and made a part hereof is an Affidavit and medical report submitted pursuant to Section 2-622(1) of the Illinois Code of Civil Procedure.

WHEREFORE, CHASITY WATKINS, as Guardian of the Person and Estate of AIDEN GREEN, a minor, demands judgment against the Defendants, VHS WEST SUBURBAN

MEDICAL CENTER, INC.; MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; NATASHA DIAZ, M.D.; AND TYLER CALLAHAN, D.O., and each of them, in a sum in excess of FIFTY THOUSAND ($50,000.00).

## COUNT II –PARENTAL CARETAKING EXPENSE CLAIM & FAMILY EXPENSE ACT

1-17. Plaintiff CHASITY WATKINS, as Guardian of the Person and Estate of AIDEN GREEN, a minor, incorporates Paragraphs 1 through 17 of Count I, as though fully set forth herein, as Paragraphs 1 through 17 of Count II.

18. As a proximate result of one or more of the aforementioned negligent acts and/or omissions by the Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC.; MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; NATASHA DIAZ, M.D.; AND TYLER CALLAHAN, D.O., AIDEN GREEN's mother, CHASITY WATKINS, and his father, TERRENCE GREEN, have become obligated for past and future medical and parental caretaking expenses incurred on behalf of AIDEN GREEN, and hereby makes a claim for same pursuant to 750 ILCS 65/15, commonly known as the Family Expense Act.

WHEREFORE, CHASITY WATKINS, as Guardian of the Person and Estate of AIDEN GREEN, a minor, respectfully requests that judgment be entered in her favor and against the Defendants, VHS WEST SUBURBAN MEDICAL CENTER, INC.; MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; NATASHA DIAZ, M.D.; AND TYLER CALLAHAN, D.O., in an amount that will compensate her for the caretaking expenses and the medical expenses caused by the Defendants' negligence. Pursuant to 735 ILCS 5/2-604, the amount of compensatory damages sought cannot be stated; however, the damages substantially exceed all applicable minimum jurisdictional amounts.

6

One of the Attorneys for Plaintiff

Michael P. Cogan
**COGAN & POWER, P.C.**
One East Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 477-2500
(312) 477-2501 (Fax)
Firm ID 49741

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

CHASITY WATKINS, as Guardian of the Person and )
Estate of AIDEN GREEN, a minor, )
                                 )
         Plaintiff, )
                                 )
   v. )         No. 16 L 5282
                                 )
VHS WEST SUBURBAN MEDICAL CENTER, INC., )
MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.; )
NATASHA DIAZ, M.D.; and TYLER CALLAHAN, D.O. )
                                 )
         Defendants. )

### *AFFIDAVIT*

I, Michael Cogan, the affiant on oath, states:

The total of money damages sought in this matter does exceed $50,000.

SUBSCRIBED AND SWORN TO
before me this _____ _____ day of
_____, 2017.

_____
NOTARY PUBLIC

Official Seal
Nancy K O'Donnell
Notary Public State of Illinois
My Commission Expires 04/16/2019

8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

CHASITY WATKINS, as Guardian of the Person and    )
Estate of AIDEN GREEN, a minor,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 16 L 5282
    )
VHS WEST SUBURBAN MEDICAL CENTER, INC.,    )
MARY LEUNG, R.N.; KARRI MacMILLAN, D.O.;    )
NATASHA DIAZ, M.D.; and TYLER CALLAHAN, D.O.    )
    )
    Defendants.    )

## AFFIDAVIT

1.    Your affiant has consulted with and reviewed the facts of the case with health professional who the affiant reasonably believes is knowledgeable in the relevant issues involved in this particular action, practices within the last six years in the area of obstetrics and gynecology and maternal fetal medicine who is qualified by experience in the subject of this case.

2.    Your affiant concludes, based on consulting with the above-described individual, that there is a reasonable and meritorious cause for the filing of this action.

3.    The reviewing health professional has determined in a written report, after a review of the medical records described in said report that there is a reasonable and meritorious cause for the filing of such action.

4.    The reviewing health professional is licensed in the State of California to practice medicine in all of its branches and is Board Certified in obstetrics and gynecology and maternal fetal medicine.

9

FURTHER YOUR AFFIANT SAYETH NOT.

_____
MICHAEL P. COGAN

SUBSCRIBED AND SWORN TO
Before me this _____ day of
_____, 2017.

_____
NOTARY PUBLIC

Official Seal
Nancy K O'Donnell
Notary Public State of Illinois
My Commission Expires 04/16/2019

10

### MEDICAL REPORT

I am a physician licensed to practice medicine by the State of California and I am board certified in both obstetrics and gynecology and in maternal fetal medicine. I am knowledgeable in the relevant issues involved in this particular matter. I have practiced longer than six years in the same areas of medicine that are at issue in this case and I am qualified by experience and have demonstrated confidence in the subject matter of this case. I have been provided with and have reviewed the medical records of Chasity Watkins and Aiden Green (Watkins, Babyboy) from West Suburban Hospital and I have also reviewed the depositions of Mary Leung, R.N. and Karri MacMillan, D.O.

Based upon my review of this material, it is my opinion that there is a reasonable and meritorious cause for the filing of an action against Dr. Karri MacMillan, Dr. Tyler Callahan, and Dr. Natasha Diaz for the following reasons:

MacMillan testified that approximately 6:50 a.m. was the last time she believed the monitor tracing showed evidence of Aiden Green's fetal heart rate.

At 7:19 a.m. the record reflected that Mary Leung, R.N. was attempting to locate the fetal heart rate without success.

At 7:28 a.m., it is again documented that Mary Leung, R.N. was attempting to locate the fetal heart rate, without success. Based upon the record and her deposition transcript, Nurse Leung spoke with Dr. Karri MacMillan and shared with Dr. MacMillan her unsuccessful attempts to locate the FHR (fetal heart rate) and requested that Dr. MacMillan come to the room to place internal monitors. According to the depositions of both Dr. MacMillan and Nurse Leung, Dr. MacMillan responded that she was in the process of performing morning rounds with the obstetrical team, including Dr. Callahan and Dr. Diaz, at the time that Mary Leung RN called Dr. MacMillan. Dr. MacMillan advised Nurse Leung that she would come to Ms. Watkins' room once rounds had been completed. In the interim, she suggested that Nurse Leung make further attempts to locate the fetal heart rate without offering any specific medical advice regarding how to locate said fetal heart rate.

The fetal heart rate was never found by Nurse Leung who, at approximately 8:00 a.m., asked for assistance which was offered by the charge nurse, Nurse Brenda Vega Candelario, who was coming off shift.

Shortly after 8:00 a.m. this nurse found the newborn under Chasity Watkins' right thigh, face down, unresponsive, cool to touch and bluish-purple. Additional medical staff were called emergently to the room and resuscitative efforts went forward.

The newborn was born with profound asphyxia. The arterial blood gas pH was 6.6 with a base deficit of -27. Dr. MacMillan testified that an arterial blood gas pH of 6.6 is "very worrisome." Apgar scores of 1, 4, 4, 4, at 1, 5, 10 and 15 minutes were recorded after major resuscitative efforts. Aiden Green was ultimately diagnosed with hypoxic ischemic encephalopathy (HIE). Based upon my training, education and experience and review of the material described above, it is my opinion that there is a reasonable and meritorious cause for the filing of an action against Karri MacMillan, D.O. and Mary Leung, R.N., for the following reasons:

Dr. MacMillan's response to Nurse Leung's call for help was woefully inadequate and a clear violation of the standard of care. Rather than advising Nurse Leung that she would come to the room after completing her rounds, Dr. MacMillan should have advised her attending, Dr. Diaz, of the substance of the phone call and expeditiously moved to Ms. Watkins' room or make sure that either fellow, Dr. Callahan, or the attending, Dr. Diaz, go in her stead. It is quite troubling that more than 30 minutes after Nurse Leung's call for help neither Dr. MacMillan or a member of her rounding team had yet made it to Ms. Watkins' room. Had Dr. MacMillan acted as a reasonably careful physician under these circumstances, she would have been at the room within minutes and examined Ms. Watkins. Moreover, Dr. MacMillan's failure to offer Nurse Leung any medical advice regarding how to successfully locate the fetal heart rate, instead of merely suggesting she would arrive at the room after rounds, is a violation of the standard of care. It is my opinion that had Dr. MacMillan arrived at Chasity Watkin's room when Nurse Leung called, she would have immediately determined that the newborn had delivered or, in the alternative, that Ms. Watkins had progressed rapidly, was fully dilated and ready to deliver. In either event, it is more probably true than not that this crisis would have been avoided.

I further believe that there is reasonable and meritorious cause for the filling of an action against Mary Leung, R.N. When Nurse Leung took report from her predecessor, the fetal heart rate was not present on the monitor. In fact, it appears that the fetal heart rate was last seen on the monitor at approximately 6:36 a.m.

At 7:19 a.m., a note reveals that Nurse Leung was attempting to locate the fetal heart rate. She was unsuccessful. At that point, the standard of care applicable to a reasonably well-qualified obstetrical nurse required Nurse Leung to reach out to Dr. MacMillan, which includes those physicians making up the obstetrical team, Dr. Callahan and Dr. Diaz, and to her charge nurse. Had the obstetrical team of Dr. MacMillan, Dr. Callahan and/or Dr. Diaz responded to Nurse Leung at or about 7:19 a.m. as she did at 7:28 a.m., it was then incumbent upon Nurse Leung to immediately and aggressively go up the nursing chain of command by seeking an immediate consult from her charge nurse. If the charge nurse and/or Dr.MacMillan did not respond within minutes, it would then be incumbent upon Nurse Leung to follow the Hospital's nursing chain of command and to do so rapidly. Passively accepting Dr. MacMillan's response to her call at or about 7:28 a.m. that she (Dr. MacMillan) would come by after rounds was a departure from the standard of care on the part of Nurse Leung. Nurse Leung's failure to contact her charge nurse within minutes of her 7:19 a.m. note was likewise a departure from the standard of care on the part of Nurse Leung. Had Nurse Leung complied with the standard of care in acting as the eyes and ears of her patient, it is difficult to accept that someone would not have been available to examine Ms. Watkins by 7:30 a.m. Had this occurred, it is my opinion that the child would have been found delivered or that Ms. Watkins would have been found to be fully dilated and the fetal head crowning.

Had Dr. MacMillan, Dr. Callahan, Dr. Diaz or Nurse Leung complied with the standard of care and acted aggressively on behalf of Ms. Watkins and her unborn/newborn child, there is a reasonable likelihood that the catastrophic outcome would have been avoided.

I reserve my right to change and/or update these opinions as further information becomes available.

*Andrew D Hull MD*

May 3, 2016

Michael P. Cogan
Cogan & Power, P.C.
1 East Wacker Drive
Suite 510
Chicago, IL 60601

Re: Aiden Green/Chastity Watkins

Dear Mr Cogan,

In response to your request, I am issuing the follow report related to the delivery of the above
captioned patient. The conclusions contained herein result, in part, from the materials sent hy
your office contained on a DVD including:

Fetal monitor tracings from West Suburban Hospital
Hospital records for Chastity Watkins
Hospital records for Aiden Green( her newborn son)
Discharge summary from Lurie Childrens Hospital( following neonatal transfer)

From the records the following facts are clear:

1. The patient is admitted at ~0134 on 11/04/2015 , at 36 ½ weeks GA with a diagnosis or
   premature rupture of the membranes( PROM).
2. During the next several hours, following an order for continuous fetal monitoring, the
   fetus appears entirely normal with normal baseline heart rate, variability, and
   accelerations; all indicating no apparent adverse condition.
3. By 0540 hours, a progress note documents: " 4 cm dilation/90%effaced/-2 station, and
   epidural in place.
4. At 0636 hours, the fetal signal is lost, with a note by the nurse at 0641 , " adjusting EFM"
5. At 0728, 52 minutes since the last recorded fetal heart rate, another nursing note, ""
   attempting to locate the FHR" is entered.
6. At approximately 0800 a nurse in the room finds a newborn, "cold and no cry" lying
   between the patients legs, after which appropriate help is summoned.
7. Aiden is born with profound asphyxia: a pH of 6.6 and base deficit of -27, and given
   Apgar scores of 1,4,4,4, at one, five, ten , and fifteen minutes after major recusitative
   efforts.
8. After over two months in the hospital, he is finally discharged with a diagnosis of
   Hypoxic Ischemic Encephalopathy( HIE ).

From the medical records, the facts listed above, and my expecienced as a Board Certified Maternal- Fetal Medicine specialist, it is clear that this newborn suffered from an injury occurring sometime after 0636 hours. While the record is so incomplete making it impossible to determine if the resultant injury occurred before the actual delivery, or while the newborn was trapped between his mothers legs, it is certain that had proper monitoring of both mother and fetus been accomplished, that this end result would have been avoided. As a physician licensed to practice in Illinois, I believe there is probable cause to proceed with malpractice action in this matter.

Tab B

**CERTIFICATION**

Pursuant to the provisions of 42 U.S.C. § 233, and by virtue of the authority delegated to me by the Attorney General under 28 C.F.R. § 15.4 and through the United States Attorney for the Northern District of Illinois, I hereby certify that I have read the complaint in *Chasity Watkins, as Guardian of the Person and Estate of Aiden Green, a minor, v. VHS West Suburban Hospital, et al.*, No. 16 L 5282 (Circuit Court of Cook County, Ill.), and all attachments thereto. On the basis of the information now available, I find that at the relevant times, the PCC Community Wellness Center (PCC) was a private entity receiving grant money from the Public Health Service pursuant to 42 U.S.C. § 233. Further, I certify that Drs. Natasha Diaz and Tyler Callahan were acting within the scope of their employment at the PCC Community Wellness Center with respect to the incidents referred to in the complaint. Accordingly, for purposes of the above case, Drs. Natasha Diaz and Tyler Callahan are deemed to be employees of the United States pursuant to 42 U.S.C. § 233, for federal statutory tort purposes only.

*Thomas Walsh*
—————————————————
THOMAS P. WALSH
Chief, Civil Division
Office of the United States Attorney
   for the Northern District of Illinois

Date: February 21, 2018

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

NOTICE OF REMOVAL AND SUBSTITUTION

was served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by first-class mail on February 21, 2018, to the following non-ECF filers:

Michael P. Cogan                    Smith Amundsen LLC
Cogan & Power, PC                   150 North Michigan Avenue
One East Wacker Drive, Suite 510    Chicago, Illinois 60601
Chicago, Illinois 60601

                                    s/ Thomas P. Walsh
                                    THOMAS P. WALSH
                                    Assistant United States Attorney
                                    219 South Dearborn Street
                                    Chicago, Illinois 60604
                                    (312) 353-5312
                                    thomas.walsh2@usdoj.gov